```
      IN THE UNITED STATES DISTRICT COURT
   FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                  PARKERSBURG
```

LAMP PEST CONTROL, INC.,
d/b/a LAMP PESTPROOF, a
West Virginia Corporation, et al.,

    Plaintiffs,

v.                            Case No. 6:05-cv-00522

DEBBIE HEMINGWAY, in her official
capacity as an employee of the United
States Department of Treasury, Bureau of
Public Debt,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Currently pending before the court are the (1) United States' Motion to Quash Subpoenas, filed July 6, 2005 (Docket Sheet Document # 4); and (2) Defendant Lamp Pest Control, Inc.'s ("Lamp") Motion to Remand[1], filed August 25, 2005 (# 7).

On June 28, 2005, the United States, by counsel, filed a notice of removal of subpoena proceedings in two cases filed in the Circuit Court of Wood County, West Virginia, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446.  (# 1.)  An amended notice was filed on June 30, 2005.  (# 3.)  The subpoenas at issue arose out of two cases filed in the Circuit Court of Wood County, West Virginia,

---

[1] By order entered September 13, 2005, the presiding District Judge referred this Motion to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A). (# 9.)  Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, because Lamp's Motion to Remand is not dispositive of any claims or defenses, the Motion to Remand will be decided in this memorandum opinion and order.

Ross v. Lamp Pest Control, Inc., d/b/a Lamp Pestproof et al. v. Positive Formulators, Inc., Civil Action Number 09-C-94 and Burns v. Lamp Pest Control, Inc., d/b/a Lamp Pestproof, et al. v. Positive Formulators, Inc., Civil Action Number 02-C-158. (# 1, ¶ 1.) The two civil actions involve injuries to two former United States Department of Treasury ("Treasury"), Bureau of Public Debt ("BPD") employees, which injuries allegedly resulted from the application of pesticides while the employees worked at BPD's Park Shopping Center location. (# 4, Exhibits 3 and 4.) The United States is not a party in either case. (# 4, Exhibits 3 and 4.)

In the context of the two cases cited above, counsel for Lamp issued subpoenas commanding the appearance and testimony of Debbie Hemingway at a deposition. (# 4, Exhibit 5.) Ms. Hemingway is an employee of the BPD. (# 4, ¶ 3.) Federal Treasury regulations prohibit current and former employees from testifying about information acquired during the performance of their official duties without prior authorization from agency counsel. 31 C.F.R. § 1.11(c) (2005). To obtain authorization, the requesting party must submit an affidavit or statement setting forth "the reason for the demand, a showing that other evidence reasonably suited to the requester's needs is not reasonably available from any other source and, if testimony is requested, the intended use of the testimony, a general summary of the desired testimony, and a showing that no document could be provided and used in lieu of testimony." Id., §

2

1.11(d)(3)(i).  The affidavit or statement is then considered using a number of factors identified in the regulations, including whether the number of similar requests would have a cumulative effect on the expenditure of agency resources, among others.  Id.

   Prior to counsel for Lamp's request to depose Ms. Hemingway, plaintiffs in the above-referenced civil actions sought authorization for the testimony of seven BPD employees who were working at the Park Shopping Center building on October 17, 2000, and the days that followed.  (# 4, Exhibit 3.)  BPD's chief counsel, Brian Ferrell, authorized the testimony of all seven BPD employees.  In January of 2005, counsel for Lamp issued subpoenas for two additional BPD employees, Bobby Gunn and Ms. Hemingway.  (# 4, Exhibit 5.)  Lamp's counsel provided an affidavit and, by letter dated January 28, 2005, BPD's chief counsel deferred a decision on these individuals until depositions of the seven previously approved individuals had been taken.  (# 4, Exhibit 5.)  On March 10, 2005, following review of the transcripts of the completed depositions, BPD's chief counsel authorized the requested testimony of Bobby Gunn, but denied authorization as to Ms. Hemingway.  (# 4, Exhibit 6.)

   In the affidavit related to Ms. Hemingway, Lamp's counsel represented that Ms. Hemingway

> was an employee of the Bureau of Public Debt working at the Park Shopping Center building on October 17, 2000, and the days that followed and was a witness to the condition of the building both before and after the

>pesticide application.  It is the intention of the parties to determine the nature of the information possessed by both Bobby [G]unn and Debbie Hemingway concerning the events surrounding the application of the pesticides, including the entity(ies) applying the pesticides, the manner of application, and the effects, if any, upon them, and what may have been seen, heard or experienced.

(# 4, Exhibit 4.)

In denying authorization to depose Ms. Hemingway, BPD's chief

counsel stated that

>[t]he parties to this lawsuit have already obtained the testimony you seek of Deborah Hemingway from six other Public Debt employees: Cheryl Rake, Amy Arbogast, Patty Smith, Candace Day, Mike Smith, and Carolyn Alloway.  All six employees have testified about the conditions of the Park Center building before and after the pesticide application, the effects (if any) upon them, and what they saw, heard or experienced.  Your affidavit does not contain any justification for a unique need for Ms. Hemingway to testify about these matters.  In fact, you have already obtained this information from several Public Debt employees.
>
>  Given the cumulative and duplicative nature of your request, and given that you have already obtained the information you seek from other sources, I find that the request for Deborah Hemingway's testimony as set forth in Paragraph 5 of your affidavit is unduly burdensome.  The ... time of employees for conducting official business is greatly compromised by repeated requests for the same testimony from different Public Debt employees.  Additionally, the request for this testimony fails to demonstrate that the information requested is genuinely necessary to the proceeding.  The request for the testimony fails to establish that the testimony is unavailable from other sources (indeed, it has already been provided by six other sources).  Your request also fails to establish that the request for the testimony is reasonable in its scope, given that six Public Debt employees have already testified about the condition of the building before and after the pesticide application, the events surrounding the application of the pesticides, including the entity(ies) applying the pesticides, the

> manner of application, and the effects, if any, upon them, and what they may have seen, heard or experienced. I also find that the number of similar requests have a cumulative effect on the expenditure of agency resources.

(# 4, Exhibit 6.)

By letter dated March 16, 2005, Lamp's counsel sought reconsideration of the decision by BPD's chief counsel denying authorization for the request to depose Ms. Hemingway. Lamp's counsel asserted that

> I understand your concern that we are obtaining cumulative testimony. I can honestly say, though, that Debbie Hemingway's testimony is not cumulative at all in nature; rather, Ms. Hemingway was identified by Cheryl Rake as also being present when the other exterminating company was in the building spraying earlier in the day before the known spraying by Lamp Pest. As stated in the January 31, 2005 letter to you, Ms. Hemingway's involvement is necessitated because of the suspicion we have always had that another pest control company (which we believe to be Dodson Brothers) was in the building spraying in the hours and minutes before Lamp provided its own application. While Cheryl Rake provided some useful evidence regarding the presence of another pest removal company applying pesticides inside the building earlier on the same day that Lamp Pest applied pesticides in the building, Hemingway should be able to shed more light on the identity of the applicator and/or at least provide some unique perspective in the manner of application of pesticides in the building and by whom in the hours and minutes before Lamp was in the building.

(# 4, Exhibit 7.)

By letter dated April 15, 2005, BPD's chief counsel indicated he had considered counsel for Lamp's March 16, 2005, letter, but again declined to authorize Ms. Hemingway's deposition. (# 4, Exhibit 8.)

On May 29, 2005, Lamp's counsel subpoenaed Ms. Hemingway in the

above-referenced State court actions to appear for a deposition on June 23, 2005. (# 4, Exhibits 1 and 2.)

On June 9, 2005, the United States filed and served by mail, a motion to quash the subpoenas served on Ms. Hemingway, along with a supporting memorandum and proposed order. (# 4, Exhibit 9.) On June 13, 2005, a status conference was held in the above-referenced civil cases in the Circuit Court of Wood County, West Virginia before Judge Jeffrey Reed. (# 4, Exhibits 10, 11 and 12.) The United States asserts that it "was not notified of the status conference and was not otherwise aware that a status conference was scheduled." (# 5, p. 8.) At the status conference, Judge Reed denied the Motion to Quash. Counsel for Lamp prepared the proposed order, which was entered by Judge Reed on June 23, 2005. (# 4, Exhibits 11 and 12.) The order states that

> [t]he Court, upon consideration of the Motion and Memorandum in Support of said Motion filed by The United States, is of the opinion that the absence of the request for Notice of Hearing and the presentation of the proposed Order with the Motion and Memorandum signifies to the court that The United States has not requested a hearing on its Motion, prior to the Court ruling.

(# 4, Exhibit 12.) The court further stated that

> based on the representation of counsel for the parties in this action that said counsel intends only to question Ms. Hemingway about her observations of the area around her work station on pertinent dates and times, and does not intend to question Ms. Hemingway on the subject matter or specifics of the work being engaged in by Ms. Hemingway, the Court hereby **DENIES** The United States Motion to Quash and further **ORDERS** that Ms. Hemingway's deposition go forward as scheduled pursuant to said subpoena.

(# 4, Exhibit 12.)

The United States asserts that it was not until the afternoon of June 21, 2005, eight days after Judge Reed's ruling and two days before Ms. Hemingway's deposition, that it learned of Judge Reed's ruling on the motion to quash. (# 5, p. 9.)

Counsel for Lamp agreed to continue the deposition to allow the United States to obtain a copy of Judge Reed's order and remove the subpoena proceedings to this court, which it did on June 28, 2005. The United States filed an amended notice of removal on June 30, 2005, to correct two typographical errors. (# 3.) On July 6, 2005, the United States filed a motion to quash the subpoenas served on Ms. Hemingway. (# 4.) Lamp has not formally responded to the Motion to Quash. On July 25, 2005, Lamp served the United States with a Motion to Remand, but mistakenly filed it in the Circuit Court of Wood County. (# 6, p. 2 fn. 3; # 7, p. 3 fn. 1.) Lamp argued in the unfiled motion to remand that the United States' amended notice of removal was not timely filed. (#6, Exhibit 1.) On August 11, 2005, the United States responded to the unfiled Motion to Remand, arguing that because the motion to remand was not timely filed, Lamp waived any arguments related to procedural defects in the notice of removal. (# 6.)

On August 25, 2005, Lamp filed a motion to remand with the Clerk of this court, this time asserting that remand is appropriate based on lack of subject matter jurisdiction. (# 7.) On September

6, 2005, the United States responded to the Motion to Remand.  (# 8.)

United States' Motion to Quash Subpoenas

The court finds that the subpoenas served on Ms. Hemingway should be quashed as she cannot be ordered to testify.

In <u>United States ex rel. Touhy v. Ragen</u>, 340 U.S. 462, 468-70 (1951), the United States Supreme Court ruled that in a case where the United States was not a party, a subordinate official of the Justice Department would not be held in contempt for refusing to obey a subpoena <u>duces</u> <u>tecum</u> when a superior department official acting pursuant to valid federal regulations governing the release of official documents promulgated pursuant to the statutory predecessor of the current "housekeeping" statute, 5 U.S.C. § 301, had prohibited his compliance with the subpoena.  Indeed, as our Court of Appeals recognized in <u>Boron Oil Co. v. Downie</u>, 873 F.2d 67, 69 (4th Cir. 1989), <u>Touhy</u> "is part of an unbroken line of authority which directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations." As the court in <u>Boron Oil</u> explained "[t]he policy behind such prohibitions on the testimony of agency employees is to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business."   <u>Id.</u> at 70 (citing

8

Reynolds Metals Co. v. Crowther, 572 F. Supp. 288, 290 (D. Mass. 1982)).

"The jurisdiction of a federal district court upon removal, pursuant to 28 U.S.C. § 1442, is essentially derivative of that of the state court, and the federal court acquires none upon removal." Id. (citing Arizona v. Manypenny, 451 U.S. 232, 242 n.17 (1981)). "'[J]urisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction.  Where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although in a like suit originally brought in a federal court it would have had jurisdiction.'" Id. (quoting Minnesota v. United States, 305 U.S. 382, 389 (1939)).  Thus, "[t]he doctrine of sovereign immunity precludes the state court - and the federal court which gained limited jurisdiction upon removal - from exercising jurisdiction to  compel [the federal employee] to testify contrary to [agency] instructions, and also denied it the authority to review and set aside the ... decision and the federal regulations under which it is made." Id.

There has been no assertion that the United States waived its sovereign immunity, and the court finds no indication of waiver. Thus, neither the State court in denying the United States' motion to quash, nor this court on removal, has authority to proceed against Ms. Hemingway, a federal employee acting pursuant to federal agency direction, namely, chief counsel of the BPD.

9

Furthermore, as the court in Boron Oil reasoned

> [t]he principle of federal supremacy reinforces the protection of sovereign immunity in the case at bar. The assertion of state court authority to override the EPA's Touhy regulations clearly violates the Constitution's Supremacy Clause. First, Congress has expressly limited Administrative Procedure Act review to the federal courts, and a state court's assertion of the power of judicial review over federal agencies directly contravenes 5 U.S.C. § 702. Second, properly promulgated agency regulations implementing federal statutes have the force and effect of federal law which state courts are bound to follow. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 295-96, 99 S. Ct. 1705, 1714-15, 60 L.Ed.2d 208 (1979). The action of a state court to compel an official of a federal agency to testify contrary to the agency's duly enacted regulations clearly thwarts the purpose and intended effect of the federal regulations. Such action plainly violates both the spirit and the letter of the Supremacy Clause.

Id. at 71. The court notes that Lamp has not challenged the United States' actions directly under the Administrative Procedure Act, 5 U.S.C. § 702.

Thus, based upon Touhy, particularly as it was applied in Boron Oil, and based on principles of sovereign immunity, the court concludes that the State court had no authority to order that the deposition of Ms. Hemingway proceed.

Accordingly, it is hereby **ORDERED** that United States' Motion to Quash Subpoenas is **GRANTED.**

Motion to Remand

In its Motion to Remand[2], Lamp seeks an order pursuant to 28

---

[2] Lamp does not raise the issue of the United States' timeliness in removing this action, as it did in the unfiled motion to remand. As a result, the court does not here consider it.

U.S.C. § 1447(c) remanding this civil action to the Circuit Court of Wood County on the grounds that the court lacks subject matter jurisdiction to consider the United States' Motion to Quash. In particular, Lamp argues that this court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine because "lower federal courts do not have jurisdiction to review the decisions of state courts, as jurisdiction to review such decisions lie exclusively with superior state courts or the United States Supreme Court." (# 7, ¶ 6.) Lamp contends that "[t]he United States' attempt to remove this matter to Federal District Court is the functional equivalent of an appeal from the June 13, 2005 state court ruling by The Honorable Judge Jeffrey Reed of the Circuit Court of Wood County." (# 7, ¶ 8.) Lamp seeks an award of fees and costs. (# 7, p. 5.)

In response, the United States argues that it is protected by sovereign immunity and there has been no waiver and, as such, Lamp's arguments related to lack of subject matter jurisdiction are without legal significance. (# 8, pp. 5-6.) The United States asserts that Rooker-Feldman applies only to parties to litigation and only to final judgments or decisions, not interlocutory orders. "[T]he Rooker-Feldman doctrine presumes that the state court has jurisdiction over both the subject matter and the parties in the first instance in either the state or federal courts. Where the state court has no jurisdiction over the parties (or in this case

a non-party), the Rooker-Feldman doctrine simply does not apply." (# 8, p. 14.)

Pursuant to 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."

Briefly, the Rooker-Feldman doctrine, enunciated in the cases of District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), was described by our Court of Appeals in Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997) as follows:

> Under the *Rooker-Feldman* doctrine, lower federal courts generally do not have jurisdiction to review state-court decisions; rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court. The *Rooker-Feldman* doctrine bars consideration not only of issues actually presented to and decided by a state court, but also of constitutional claims that are "inextricably intertwined with" questions ruled upon by a state court, as when success on the federal claim depends upon a determination "that the state court wrongly decided the issues before it."

(citations omitted).

As our Court of Appeals stated more recently,

> [t]he *Rooker-Feldman* doctrine ... preserves a fundamental tenet in our system of federalism that, with the exception of habeas cases, appellate review of state court decisions occurs first within the state appellate system and then in the United States Supreme Court. A litigant may not circumvent these jurisdictional mandates by instituting a federal action which, although not styled as an appeal, "amounts to nothing more than an attempt to seek review of [the state court's] decision by

12

a lower federal court."

American Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 316 (4th Cir. 2003) (citations omitted).

The court need not reach Lamp's poorly asserted Rooker-Feldman argument in support of remand. As explained above, there has been no waiver of the United States' sovereign immunity, and, as a result, neither the State court in denying the United States' motion to quash, nor this court on removal, has the authority to order Ms. Hemingway to testify. As such, it would be inappropriate for this court to remand the subpoena proceedings to State court, which clearly lacks jurisdiction as to the subpoena proceedings. Instead, the subpoena proceedings originally filed in State court and removed to this court should be dismissed and removed from the court's docket.

Accordingly, it is hereby **ORDERED** that Lamp's Motion to Remand is **DENIED**.

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: October 4, 2005

_____
Mary E. Stanley
United States Magistrate Judge

13